UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 4:19-CR-20 |
| v. | ) Judge McDonough |
| | ) |
| ANTHONY GLENN BEAN | ) |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, files this sentencing memorandum and respectfully requests that the Court impose a sentence at the top of the advisory Guidelines range. Such a sentence would comport with the factors set forth in 18 U.S.C. § 3553, hold the defendant accountable for all three of his convictions, vindicate the two victims' constitutional rights, and account for the defendant's refusal to accept responsibility for repeatedly and willfully violating the law by abusing Tennessee residents who were in the custody of local law enforcement officers.

## INTRODUCTION

On January 28, 2022, after a bench trial, the defendant was convicted of three counts of willfully depriving individuals of their constitutional rights under color of law in violation of 18 U.S.C. § 242. Specifically, the Court found the defendant, then Chief of the Tracy City Police Department, guilty of using excessive force against arrestee C.G. on two occasions during C.G.'s 2014 arrest. The Court also found the defendant, then Chief Deputy and second-in-command of the Grundy County Sheriff's Office, guilty of using excessive force against arrestee F.M..

The Presentence Investigation Report (PSR) for the defendant calculates his offense level for **Count One** as 27, based on a cross-reference to the aggravated assault guideline and application of the color-of-law specific offense characteristic and the restraint adjustment. *See*

1

U.S.S.G. §§ 2H1.1, 2A2.2, 3A1.3. (PSR at ¶¶ 53–55.) The PSR calculates his offense level for **Counts Four and Five** as 18, based on the defendant's use of force and application of the color-of-law specific offense characteristic and the restraint adjustment. *See* U.S.S.G. §§ 2H1.1, 3A1.3; (PSR at ¶¶ 60–62.) The PSR groups the two C.G. counts together, as required by the Guidelines. *See* U.S.S.G. § 3D1.2(b) (defining offenses that "involve substantially the same harm within the meaning of this rule" as, *inter alia*, counts that "involve the same victim and the same act or transaction."). (PSR at ¶ 59.)

Pursuant to the Multiple Count Adjustment, the PSR assigns one unit to Count Group 1 (reflecting the one count involving F.M.) and zero units to Count Group 2 (reflecting the two counts involving C.G.), because the offense level for the C.G. group of counts is lower than the offense level for F.M. The PSR accordingly reaches a Total Offense Level of 27. (*Id.* at ¶¶ 66–72.)

The effect of the PSR's grouping analysis is that the total offense level does not reflect any additional punishment for Counts Four and Five. A Guidelines application note, however, explains that this apparent disparity may be accounted for by the Court's "latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense." U.S.S.G. § 3D1.4 app. note 2. Based upon a total offense level of 27 and a criminal history category I, the defendant's advisory Guidelines range is 70–87 months. (PSR at ¶ 104.)

**ARGUMENT**

**I. Defendant's Objections to the PSR**

The defendant raises numerous objections to the PSR, the majority of which quibble with the characterization of various portions of trial testimony with no effect on the Guidelines calculation. The only substantive objections to the PSR's Guidelines calculation are his objections

2

to the aggravated assault cross-reference and restraint adjustment to Count One. While evidence provided in discovery arguably provides a basis for the restraint of victim enhancement, upon further review of the trial transcript, the government acknowledges that the trial record does not support the enhancement. But the PSR was correct to apply the aggravated assault cross-reference to Count One. Accordingly, the defendant's offense level for Count One should be 25, which results in a Total Offense Level of 25 and Guidelines range of 57 to 71 months.

**A. Aggravated Assault Cross-Reference**

The evidence at trial supports the application of the aggravated assault cross-reference to Count One. The Guidelines define aggravated assault as "a felonious assault that involved . . . serious bodily injury[.]" U.S.S.G. § 2A2.2 app. note 1. "Serious bodily injury" is further defined as "injury involving extreme physical pain or protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 app. note 1. As the Sixth Circuit has explained, because "this definition uses the disjunctive 'or,' the Guideline applies where the victim suffered any one of these ailments." *United States v. Flores*, 974 F.3d 763, 766 (6th Cir. 2020). Thus, a "victim's need for significant medical intervention," such as hospitalization, "independently supports" a finding that the assault resulted in serious bodily injury. *Id.* at 767.

Unsurprisingly, multiple courts, including the Sixth Circuit, have held that even short periods of hospitalization and minor medical interventions such as sutures are sufficient to establish serious bodily injury. *See Flores*, 974 F.3d at 766 (holding that hospitalization to suture a victim's wounds was "sufficient to satisfy the serious bodily injury benchmark"); *United States v. Clay*, 90 F. App'x 931, 933 (6th Cir. 2004) (holding that a victim's hospitalization for sutures was sufficient to find that the victim suffered "serious bodily injury" in a case where the victim

3

was repeatedly struck in the head); *United States v. Montalban*, 604 F. App'x 100, 104 (3d Cir. 2015) (upholding a finding of serious bodily injury where the victim was hospitalized and received nine stitches); *United States v. Wilson*, 686 F.3d 868, 874–75 (8th Cir. 2012) (upholding a finding of "serious bodily injury" where the victim was hospitalized for facial swelling, a lacerated lip, and a swollen ear).

The defendant objects that F.M.'s injuries are "indivisible" and could have been caused by crashing his car. Defendant's Objections to Presentence Investigation Report, Dkt. 168 at 4. Contrary to this objection, the evidence at trial demonstrated that the defendant's assault injured F.M. and that these injuries required hospitalization and a period of neurological monitoring. The defendant was convicted of assaulting F.M. by punching him four to five times in the face with a closed fist. Trial Tr., Day 2, J. Kilgore, 132:6–10. Multiple officers testified that they observed that F.M. had injuries on-scene which were consistent with being punched in the face, including that F.M. was complaining about the "left side of his eye," which was "swollen up" and "had blood coming down through," Day 1, M. Strope, 215:7–23, and that F.M.'s face was "extremely swollen, [] black and purple, had bruising all over, and his eyes were swollen shut," Day 1, T. Tinsley, 264:12–14. As a result of that significant head trauma, F.M. was transported to the hospital. His treating physician, Dr. Stafford, testified that he suffered a significant facial hematoma and that his injuries were serious enough that he needed to be transferred to a second hospital with a neurology practice to be monitored for twenty-four hours for possible brain bleeding. Day 2, Stafford, 190:10–191:2. Based on that testimony, the PSR correctly concludes that F.M.'s head injuries "require[d] medical intervention such as . . . hospitalization" and therefore qualify as serious bodily injury for purposes of the aggravated assault cross-reference.

### B. Defendant's Other Objections

The remainder of the defendant's objections nit-pick various portions of trial testimony and the inclusion or omission of certain facts from the PSR in an attempt to minimize his culpability and avoid responsibility for his conduct. *See, e.g.*, Defendant's Objections to Presentence Investigation Report, Dkt. 168 at 3 (objecting inaccurately to the PSR's alleged failure to discuss Deputy Henegar's use of force on F.M.); 4 (objecting to ¶ 33 on the ground that "the strike delivered by Defendant could have been in response to a perceived threat and to ¶ 40 because it failed to include acts that make C.G. appear more dangerous). The defendant also complains that the PSR discusses conduct upon which the defendant was acquitted, even though the Court is permitted to consider that conduct for purposes of sentencing. *E.g.*, *United States v. White*, 551 F.3d 381, 384 (6th Cir. 2008) (en banc) (holding that acquitted conduct proven by a preponderance of the evidence may be considered at sentencing). None of these objections affect the Guidelines calculation, but they do amply show the defendant's continued refusal to accept responsibility for his criminal conduct.

## II. Determining the Appropriate Sentence

The defendant repeatedly abused his authority as one of the highest-ranking law enforcement officers in Grundy County to rough up powerless arrestees in front of several other, more junior officers. The defendant has still not taken full responsibility for his offenses, a fact that sends a regrettable message to the law enforcement and Grundy County communities. A sentence at the high end of the Guidelines range would reflect the circumstances of the defendant's repeated and flagrant civil rights violations, serve the statutory objectives of promoting respect for the law and providing just punishment, and deter those who might otherwise follow his example.

### A. Nature and Circumstances of the Offense and History and Characteristics of the Offender (§ 3553(a)(1))

**1. Nature and Circumstances of the Offense**

Instead of using his authority to protect and serve the citizens of Grundy County, the defendant abused his power by roughing up arrestees who believed they had such little recourse that they did not even complain to law enforcement about their mistreatment by one of the community's most senior law enforcement officers. The defendant chose as his victims restrained, intoxicated men who could not fight back, men whose many experiences with the criminal justice system made them ideal victims for him. Predictably, at trial, the defendant repeatedly attempted to attack the credibility of the victim-witnesses, who were obviously reluctant to testify in open court about their mistreatment by a well-known, veteran law enforcement officer.

The counts of conviction are representative of the defendant's frequent abuses, but they are by no means exhaustive. The Court heard ample evidence about the charged conduct—four separate counts of willful civil rights violations—and ample evidence about the defendant's uncharged conduct, the other instances involving similarly powerless victims, needless abuses of power, and violence by the defendant against anyone who annoyed him.

The defendant's abuses were brazen, in that he assumed, often correctly, that he could count on the silence of the junior officers around him. The defendant tested and ensured this loyalty by frequently bragging about his abuses, as several witnesses testified. The defendant created in Grundy County a culture so toxic that junior officers feared reporting misconduct, and the community's most disfavored citizens accepted excessive force as a part of their lot in life. A sentence at the high end of the Guidelines range would say to this community and to these officers that such repeated and flagrant abuses of authority are unacceptable and will not be tolerated in rural communities in East Tennessee.

### 2. History and Characteristics of the Defendant

The defendant has never accepted responsibility for his criminal conduct.[1] Further, while some of the defendant's personal characteristics are positive, they also underscore the deliberateness of his disregard for the law. *Cf, e.g.*, *United States v. Clay*, No. 2:21-MJ-00069, 2021 WL 1553822, at *4 (S.D.W. Va. Apr. 19, 2021) ("Much like a defendant who is alleged to have committed a crime while under court supervision, a defendant who is alleged to have committed a crime while entrusted with the responsibility and power of law enforcement has abused trust and demonstrated disdain for the laws he was charged with enforcing.").

Unlike many defendants, this defendant was not desperate, powerless, or inexperienced. Rather, he inserted himself in these arrests, on both occasions endangering civilians by bringing his wife with him, and escalated, rather than deescalated, these situations, placing the officers around him at greater risk by beating up compliant individuals. He was the most senior, most experienced, and most powerful officer on each scene at the time he used needless force against his victims. And the defendant was in his fifties when he used his authority and his fists to take out his anger on people who could not fight back.

When he was finally caught, the defendant chose to refuse to accept responsibility, forcing junior officers to testify as to what they saw their senior officer do, even though, as several officers testified, such testimony risked their careers, community standing, and relationships. Although given several opportunities to accept responsibility, the defendant refused. To this day he has failed to acknowledge his conduct.

---

[1] According to witnesses present in this courtroom, after the defendant was convicted and the Court ordered that he be detained, he yelled words to the effect, "I'm not sorry for what I've done, but I'm sorry for what I've done to my family." As noted above, even the defendant's frivolous nit-picking of the PSR evinces his refusal to accept the Court's verdict, let alone responsibility for his offenses.

The defendant's history and personal characteristics are appropriately considered by the Sentencing Guidelines. The defendant's criminal history score is zero and accurately reflects the fact that he, like most law enforcement officers, has no prior criminal history. (PSR at ¶ 78.) There is nothing about the defendant's age (U.S.S.G. § 5H1.1), education or vocational skills (§ 5H1.2), mental, emotional, or physical condition (§§ 5H1.3 and 1.4), employment record (§ 5H1.5), or family ties (§ 5H1.6) that warrants an adjustment of his advisory Guidelines sentence. To the contrary, the defendant's maturity, law enforcement experience, and lack of mitigating circumstances weigh in favor of a Guidelines sentence at the high end of the range. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("[W]e have noted that a defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position.").

**B. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment; and the Need to Afford Adequate Deterrence to Criminal Conduct (§ 3553(a)(2))**

When victim C.G. was asked on the stand why he had not reported the defendant's misconduct to law enforcement authorities, he explained that it was because he blamed himself for incurring the defendant's wrath, and because he believed that if he reported the misconduct to law enforcement, nothing would be done: As he put it, "I kind of figured they'd just do as they've always done." Trial Tr. Day One, 116:7–177:5. What C.G. and others like him have seen happen in excessive force cases in Grundy County, as in other rural communities in East Tennessee and elsewhere, is nothing. Fortunately, enough officers were able to come forward in the present case that the Court held the defendant accountable for his abuses of authority.

8

A high-end Guidelines sentence reflects that officers' uses of excessive force, even against individuals who may have engaged in criminal conduct, even in rural communities, and even by high-ranking officers who have gotten away with it before, will be taken seriously. Further, the defendant's high rank, relative seniority, and local prominence make him more culpable than similarly situated defendants: Not only should the defendant have known better, but also he should have set a better example for the many junior officers who looked up to him. A high-end sentence is accordingly necessary to reflect the greater seriousness of the offense.

Such a sentence would afford just punishment to this defendant, promote respect for the law by those sworn to uphold it, and deter other law enforcement officers from engaging in willful violations of individuals' constitutional rights, wherever and to whomever they may occur. *See United States v. George*, No. 19-4841, 2021 WL 5505404, at \*6 (4th Cir. Nov. 24, 2021) (finding police officer's sentence substantively unreasonable where court failed to give more than "a cursory consideration of the need to deter public officials from violating individual rights" and noting that "public officials convicted of violating § 242 have done more than engage in serious criminal conduct; they have done so under the color of the law they have sworn to uphold.") (internal alterations). The deterrence effect of a high-end sentence would be particularly significant in the close-knit law enforcement community in which the defendant was prominent.

**C. Available Sentences and Sentencing Range (§ 3553(a)(3) and (4))**

The maximum statutory term of imprisonment is ten years, and the recommended Guidelines range is 57 to 71 months without the restraint enhancement as to Count One.

As noted above, the recommended Guidelines range for all *three* convictions is the same as the recommended Guidelines range for *one* of the defendant's three convictions. In other words, the recommended Guidelines range does not reflect any additional punishment for two of the

9

defendant's three convictions. Such a penalty structure only encourages law enforcement officers to commit more than one excessive force offense. The United States respectfully submits that the Court should use its "latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense," specifically described by the Guidelines commentary to reflect situations such as the present one, in which some offenses otherwise go essentially uncounted. U.S.S.G. § 3D1.4 app. note 2. The defendant's violations of C.G.'s rights also matter, and should weigh heavily in favor of a top-end sentence.

### D. The Need to Avoid Unwarranted Disparities Between Similarly Situated Defendants (§ 3553(a)(6))

A sentence at the top end of the guidelines range considers not only the defendant's uses of force against multiple victims, as explained above, but also avoids disparities with defendants with similar records and those who have been convicted of conduct that is similar but arguably less serious than the criminal conduct of the defendant in the instant matter. *See, e.g.*, *United States v. Maynard*, No. 2:21-cr-00065 (S.D. W. Va. 2022) (imposing a 108-month sentence on an officer-defendant who struck a victim repeatedly, resulting in a broken nose and shoulder); *United States v. Boone*, 110 F.Supp.3d 909 (S.D. Iowa 2015) (imposing a 63-month sentence on an officer-defendant for a single kick against an arrestee restrained by multiple officers); *United States v. King*, 1:16-cr-00415 (N.D. Ga. 2016) (imposing a 60-month sentence on an officer-defendant who struck a victim with a baton). The defendant is, in fact, in some respects even more culpable than these defendants, in that he assaulted multiple victims, multiple times, and the defendant was far more senior and experienced than these otherwise comparable defendants.

### E. Restitution (§ 3553(a)(7))

No such need has been identified in this case.

## CONCLUSION

Based upon the foregoing, the United States respectfully submits that, considering the sentencing factors set out in 18 U.S.C. § 3553(a), including the need to provide just punishment for the offense, afford adequate deterrence to criminal conduct, and promote respect for the law, a high-end sentence within the advisory Guideline range of the Sentencing Guidelines would be appropriate in this case.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

*s/ Kathryn E. Gilbert*
Kathryn E. Gilbert
Andrew Manns
Trial Attorneys
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
202-616-2430 phone
202-514-6588 fax
kathryn.gilbert@usdoj.gov


FRANCIS M. HAMILTON III
United States Attorney

*s/James Brooks*
JAMES BROOKS
Assistant U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 385-1311
james.brooks@usdoj.gov